Travis A. Gagnier
Attorney at Law.
33507 Ninth Ave South, Bldg. F
PO BOX 3949
Federal Way, WA 98063
253-941-0234  Fax: 941-0476

Honorable Karen A. Overstreet
Chapter 13

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE:<br><br>MAIER, Robert Carl & Mary Louise,<br><br> Debtor.<br><br>MAIER, Robert Carl & Mary Louise,<br><br> Plaintiff,<br><br>v.<br><br>CITIMORTGAGE, INC.<br><br> Defendant. | NO. 12-13739<br><br><br><br>ADVERSARY NO.<br><br><br>COMPLAINT TO AVOID SECOND DEED OF TRUST OF CITIMORTGAGE, INC. |

COME NOW, the Debtors in the above-entitled bankruptcy proceeding, by and through their attorney, Travis A. Gagnier, and moves the court for an order avoiding the second deed of trust on Debtors' residence, compelling CITIMORTGAGE, INC. regarding its second deed of trust, to fully re-convey its individual deed of trust to Debtors, and finding that the claim of CITIMORTGAGE, INC. is provided for in the Chapter 13 plan, but as wholly unsecured, non-priority claim is subject to discharge upon completion of the plan.

The residential real property at issue is commonly known as 6 Madison St, Everett, WA, and is legally described as follows:

SEE ATTACHED EXHIBIT "A".

CITIMORTGAGE, INC.'s second deed of trust was recorded on or about December 29, 2006 under Snohomish County Deeds and Records recording number 200612290340.

COMPLAINT TO AVOID SECOND DEED OF TRUST
PAGE 1

## CITIMORTGAGE, INC. IS AN UNSECURED CREDITOR

In trying to determine the status of a creditor, the Supreme Court in *Noble v. American Savings Bank*, 508 US 324 1993, stated the debtors "were correct in looking to §506 (a) for a judicial evaluation of the residence to determine the status of the lender's secured claim . . . ". Many cases have followed this reasoning and have used the language of §506 (a) as the sole guide to determine whether a creditor is secured or unsecured. *In Re: Zimmer,* 313 F.3d 1223 (9th Circuit 2002), *See In Re: Woodhouse, 172 B.R. 1 (Bkrtcy.DRI 1994): In Re: Sectte, 164 B.R. 453 (Bkrtcy.E.D.N.Y. 1994): In Re: Plouffe, 157 B.R. 198 (Bkrtcy.D.CONN. 1993): In Re: Hornes, 160 B.R. 709 (Bkrtcy.D.CONN. 1993).*

11 USC §506 is entitled: Determination of Secured Status, and states in part:

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."

In the instant case, the Debtors' principal residence has one other deed of trust attached before the second deed of trust held by CITIMORTGAGE, INC. The first mortgage creditor, Ocwen Loan Servicing, LLC, was owed approximately $286,069.92 at the time the case was filed. The market value of the home as of April 12, 2012 was $148,500.00. Given the market value of the debtor's property, the first mortgage creditor, Ocwen Loan Servicing, LLC, will not be paid in full upon sale of the property for its first deed of trust.

In liquidation, CITIMORTGAGE, INC., would receive nothing concerning the second deed of trust it holds on the subject property. Therefore, under §506 (a) CITIMORTGAGE, INC.

COMPLAINT TO AVOID SECOND DEED OF TRUST
PAGE 2

is the holder of an unsecured claim and, thus, is an unsecured creditor.

The Supreme Court in *Nobleman* held that 11 USC §1322 (b)(2) prohibits Chapter 13 debtors from modifying the rights of secured creditors whose claims are secured only by a mortgage on the debtor's principal residence and rejected the debtor's attempt under §506 (a) to reduce the amount of the lender's claim to the market value of the collateral. In contrast to the instant case, the *Nobleman* court was dealing with the modification of a mortgage that was partially secured and partially unsecured. In this case, the second mortgage is totally unsecured. As such, we must look to *In Re: Zimmer*, which dealt directly with holders of totally unsecured claims. 313 F3d 1220 (9th Cir. 2002).

A Chapter 13 Plan may modify the rights of holders of unsecured claims. *Id.* However, §1322 (b)(2) does restrict modification of the rights of holders of secured claims secured only by a security interest in real property that is the debtors' principal residence. Therefore, in order to avoid modification, CITIMORTGAGE, INC.'s claim must be secured to some extent by a security interest in real property that is the Debtors' principal residence. *In Re: Zimmer,* 313 F.3d 1223 (9th Circuit 2002), *In Re: Lam, 211 B.R. 36 (9th Circuit BAP 1997), In Re: Cervelli, 213 B.R 900 (Bankr.D.N.J. 1997), Wright v. Commercial Credit Corp., 178 B.R. 703 (E.D.VA. 1995).* Since the amount owed to the first mortgagee exceeds the value of the principal residence, the second mortgage is totally unsecured.

## UNSECURED CREDITOR'S CANNOT ESCAPE MODIFICATION

11 USC §1322 (b)(2) states:

"(b) Subject to subsection (a) and (c) of this section, the plan may

(2) modify the rights of holders of secured claims, other than a claim secured only by security interest in real property that is the debtor's principal residence, or of holders of unsecured claims . . ."

The Ninth Circuit in *Zimmer* held that, §1322 (b)(2), only provides protection from modification to claims that are "secured claims" as defined by §506 (a). *313 F.3d 1223 (9th Circuit 2002).* By

COMPLAINT TO AVOID SECOND DEED OF TRUST
PAGE 3

this logic, the claim of CITIMORTGAGE, INC. is unsecured both in fact and in law when the value of the Debtors' principal residence is less than the balance owed on the first mortgage. CITIMORTGAGE, INC. has not retained any security in the Debtors' principal residence whatsoever. As such, CITIMORTGAGE, INC. will not be able to escape modification of its rights. The result is that CITIMORTGAGE, INC.'s deed of trust on the Debtors' personal residence should be avoided and fully re-conveyed to Debtors.

## CONCLUSION

Accordingly, the Debtors pray that the court enter an order as follows:

1. The claim of CITIMORTGAGE, INC. is an unsecured, non-priority, dischargeable debt.

2. CITIMORTGAGE, INC.'s lien on the property is avoided and shall be held for naught.

3. CITIMORTGAGE, INC. shall immediately upon completion and discharge of Debtors Chapter 13, fully re-convey its deed of trust to the Debtor.

4. In the event the debtors' bankruptcy case is dismissed or converted to Chapter 7, the order voiding the lien of CITIMORTGAGE, INC. shall no longer apply and CITIMORTGAGE, INC.'s second deed of trust shall be in full force and effect as security for the debt owing to CITIMORTGAGE, INC. pursuant to 11 USC § 349(b).

5. CITIMORTGAGE, INC. shall receive disbursements in the Chapter 13 bankruptcy case as a general unsecured creditor.

6. CITIMORTGAGE, INC. shall amend its claim to comply with the court's order.

7. For such other relief as the court may deem proper.

Dated this 13th day of August 2012, at Federal Way, Washington.

/s/ Travis A. Gagnier            .
Travis A. Gagnier, WSBA #26379
Attorney for Debtors

COMPLAINT TO AVOID SECOND DEED OF TRUST
PAGE 4

Travis A. Gagnier
Attorney as Law
33507 Ninth Ave South, Bldg. F
Federal Way, WA 98063
253-941-0234  Fax: 941-0476

~~SCHEDULE A~~
Exhibit A

THE FOLLOWING DESCRIBED REAL ESTATE, SITUATED IN THE COUNTY OF SNOHOMISH, STATE OF WASHINGTON:

PARCEL A:

BEGINNING AT THE SOUTHEAST CORNER OF SECTION 1, TOWNSHIP 28 NORTH, RANGE 4 EAST, W.M., IN SNOHOMISH COUNTY, WASHINGTON,
THENCE SOUTH 88 DEGREES 00 MINUTES 20 SECONDS WEST ALONG THE SECTION LINE BETWEEN SECTIONS 1 AND 12, TOWNSHIP 28 NORTH, RANGE 4 EAST, W.M., IN SNOHOMISH COUNTY, WASHINGTON, A DISTANCE OF 1021.68 FEET MORE OR LESS TO AN INTERSECTION WITH THE SOUTH RIGHT OF WAY LINE OF THE BEVERLY PARK MAPLE HEIGHTS ROAD, THE TRUE POINT OF BEGINNING,
THENCE WESTERLY ON THE SAME COURSE A DISTANCE OF 131.19 FEET,
THENCE NORTH A DISTANCE OF 35 FEET MORE OR LESS TO THE SOUTHERLY EDGE OF THE BEVERLY PARK-MAPLE HEIGHTS ROAD,
THENCE EASTERLY ALONG THE SAID SOUTHERLY EDGE OF SAID ROAD A DISTANCE OF 150 FEET MORE OR LESS TO THE TRUE POINT OF BEGINNING.

PARCEL B:

THE WEST 100 FEET OF THE FOLLOWING DESCRIBED TRACT

BEGINNING AT THE INTERSECTION OF THE EAST LINE OF TRACT 33 OF BEVERLY ACREAGE TRACTS AND THE SOUTHERLY BOUNDARY OF THE RIGHT-OF-WAY OF MAPLE HEIGHTS-MUKILTEO ROAD;
THENCE SOUTH ALONG THE EAST LINE OF SAID TRACT 33 FOR 75 FEET,
THENCE WEST PARALLEL TO THE NORTH LINE OF SAID TRACT FOR 300 FEET,
THENCE NORTH PARALLEL TO THE EAST LINE OF SAID TRACT 33 TO THE NORTH LINE OF SAID TRACT,
THENCE EAST ALONG SAID NORTH LINE TO THE SOUTHERLY BOUNDARY OF MAPLE HEIGHTS-MUKILTEO COUNTY ROAD,
THENCE EASTERLY ALONG SAID ROAD BOUNDARY TO THE POINT OF BEGINNING,
ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 10 OF PLATS, PAGE 50, IN SNOHOMISH COUNTY, WASHINGTON.

ABBREVIATED LEGAL: PTN TRACT 33, BEVERLY ACREAGE TRACTS, V 10 P 50, AND PTN OF SE 1/4 OF 1-28-4

SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENTS, COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY.